1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   REYNALDO J. CASTILLO,

11            Plaintiff,                 No. 2:08-cv-3080 GEB KJN P

12        vs.

13   SOLANO COUNTY JAIL, et al.,

14            Defendants.           FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17              Plaintiff, a state prisoner currently incarcerated at Mule Creek State Prison,

18   proceeds in forma pauperis and without counsel, in this civil rights action filed pursuant to 42

19   U.S.C. § 1983.  Presently pending for decision are motions for summary judgment filed by

20   defendants Kadevari and Pilaczynski (Dkt. No. 60), defendants Solano County, Stanton, Dolan,

21   Marsh and Grapentine (Dkt. No. 65), and by plaintiff (Dkt. No. 71).  Also pending is plaintiff's

22   motion to voluntarily dismiss defendants Stanton, Dolan, Marsh and Grapentine (Dkt. No. 67),

23   which those defendants do not oppose (Dkt. No. 69).  Plaintiff has filed an opposition to

24   defendants' motions (Dkt. No. 71), and defendants have filed their replies and oppositions

25   thereto (Dkt. Nos. 70, 72, 73).

26   ////

1    For the reasons set forth below, this court recommends the dismissal of

2    defendants Stanton, Dolan, Marsh and Grapentine, as well as Solano County; the court further

3    recommends that the remaining defendants' motion for summary judgment should be granted in

4    part and denied in part, and that plaintiff's motion for summary judgment should be denied.

5    II.   Background

6    This action proceeds on plaintiff's amended complaint filed January 28, 2001.

7    (Dkt. No. 11 ("complaint," "Amended Complaint," or "AC").)  Plaintiff alleges that he

8    contracted scabies and a "Methicillin-resistent Staphylococcus Aureau" ("MRSA" or "staph")

9    infection while incarcerated at Solano County Jail, due to defendants' alleged failure to isolate

10   other infected inmates, compounded by the facility's allegedly unsanitary conditions.  This court

11   previously dismissed plaintiff's claim against defendant Dolan, for allegedly placing plaintiff in

12   an unsanitary cell on January 13, 2009 (after this case was filed), for failure to exhaust

13   administrative remedies.  (Dkt. No. 14 at 2-4; see also Dkt. No. 19.)  The court also dismissed

14   plaintiff's "third party claims" to the extent that plaintiff sought to represent the interests of other

15   inmates who may have contracted scabies and/or a staph infection, including as the alleged result

16   of defendants' failure to quarantine plaintiff.  (Dkt. No. 14 at 1-2, 4; see also Dkt. No. 19.)

17   This case now proceeds on plaintiff's Fourteenth Amendment due process claims

18   (informed by the proscriptions of the Eighth Amendment) that defendants failed to: (1) provide

19   plaintiff adequate medical care; and (2) protect plaintiff from contracting scabies and an MRSA

20   infection.  Plaintiff alleges that he has residual "scars on my arms and torso area, and a silver-

21   dollar size scar on my right leg, thigh area."  (Dkt. No. 11 at 8.)  He contends that these diseases

22   put him "in a state of fear for my life with continu(ous) anxiety and stress," in part because "[i]t

23   is known in Solano County Jail that inmates who recklessly expose other inmates to contagious

24   disease will get physically attacked."  (Id.)  Plaintiff alleges that contracting these diseases caused

25   him "psychological stress" and "physical and psychological pain," and required plaintiff to

26   isolate himself so as not to put others at risk.  (Id. at 8-9.)

1    Plaintiff seeks damages totaling $1,200,000, as recompense for the alleged

2  violation of his constitutional rights, and his pain and suffering.  Plaintiff's requests for

3  injunctive relief are now moot because each such request pertained only to plaintiff's former

4  detention at Solano County Jail.[1]  Thus, plaintiff's request for monetary damages is the only

5  remaining relief sought.

6  III.  Plaintiff's Motion to Dismiss

7    Plaintiff requests voluntary dismissal of the following defendants:  Solano County

8  Sheriff Stanton, Sergeant Dolan, and correctional officers Marsh and Grapentine.  (Dkt. No. 67.)

9  Plaintiff states that, "[b]ased upon the evidence acquired through discovery with the medical

10  defendants in this case, plaintiff finds no evidence to support culpability of [these] defendants. . .

11  ."  (Id. at 1.)  As plaintiff concedes, these correctional officials are not responsible for making

12  medical decisions at Solano County Jail, and plaintiff's reliance on a provision in the County's

13  "Inmate Rules Handbook," which authorizes administrative segregation for disciplinary reasons,

14  is not relevant to the jail's isolation of inmates for medical reasons.  Defendants filed a statement

15  of non-opposition to plaintiff's motion.  (Dkt. No. 69.)

16    Accordingly, defendants Stanton, Dolan, Marsh and Grapentine should be

17  dismissed from this action.  The remaining defendants are Solano County[2] (dismissal is

18

19    [1]  Plaintiff sought the following injunctive relief, now moot (Dkt. No. 11 at 10):

20    1.  For the court to order that Solano Count[y] Jail not house me with inmates
        with highly contagious diseases.

21    2.  For defendants not to house me in Z Module if I don't have medical
        isolation needs.

22    3.  For defendants to quarantine me or any other inmate with highly
        contagious diseases.

23    4.  For defendants not to use Z Modules for punitive disciplinary reasons.

24    5.  For Solano County Jail to provide less constrictive environment for me to
        prepare civil suit and extend 15 minutes to one hour a week for pro-per
        phone calls commensurate to my security needs.

25

26    [2]  Defendants properly construe plaintiff's suit against the Solano County Jail as a suit
     against Solano County.  Local governmental units, such as counties, are considered "persons"

recommended <u>infra</u>), and the medical defendants, physician Ravinder Kadevari, M.D., and physician assistant Chris Pilaczynski.

IV.  <u>Legal Standards</u>

      A.  <u>Legal Standards for Summary Judgment</u>

                Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), quoting Federal Rule of Civil Procedure 56(c).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u> at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary

within the meaning of Section 1983.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 70 (1989); <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 690-91 n.54 (1978), and related text.  In contrast, "persons" under Section 1983 do not encompass local governmental agencies, such as the Solano County Jail.  <u>See</u> e.g. <u>United States v. Kama</u>, 394 F.3d 1236, 1240 (9th Cir. 2005) (Ferguson, J., concurring) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983") (citations omitted).  <u>See</u> discussion, <u>infra</u> ("Legal Standards for Municipal Liability Under Section 1983").

judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n , 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248; T.W. Elec. Serv., 809 F.2d at 631.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e), Advisory Committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Matsushita, 475 U.S. at 587.  Nevertheless,

1  inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

2  factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602

3  F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

4  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

5  some metaphysical doubt as to the material facts . . .  Where the record taken as a whole could

6  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

7  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

8         On May 15, 2009 (Dkt. No. 16), the court advised plaintiff of the requirements for

9  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 29.)

10 See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035

11 (1999), and Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

12       B.  Legal Standards for Municipal Liability Under Section 1983

13        Title 42, United States Code, section 1983, provides a private right of action

14 based on proof that a "person," acting under color of state law, committed an act that deprived

15 the plaintiff of a right, privilege, or immunity protected by the Constitution or other federal law.

16 42 U.S.C. § 1983.  Counties and other local governmental entities are "persons" within the

17 meaning of the statute.  Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690

18 (1978).  However, "a local government may not be sued under § 1983 for an injury inflicted

19 solely by its employees or agents.  Instead, it is when execution of a government's policy or

20 custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

21 represent official policy, inflicts the injury that the government as an entity is responsible under §

22 1983."  Monell, 436 U.S. at 694.

23        "A plaintiff may . . . establish municipal liability by demonstrating that (1) the

24 constitutional tort was the result of a longstanding practice or custom which constitutes the

25 standard operating procedure of the local government entity; (2) the tortfeasor was an official

26 whose acts fairly represent official policy such that the challenged action constituted official

1  policy; or (3) an official with final policy-making authority delegated that authority to, or ratified

2  the decision of, a subordinate."  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (citation and

3  internal quotation marks omitted).  Thus, a plaintiff may establish, under Section 1983, the

4  liability of a local governmental entity by showing that the alleged "constitutional violation

5  resulted from:  (1) an employee acting pursuant to an expressly adopted official policy; (2) an

6  employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a

7  final policymaker."  Delia v. City of Rialto, 621 F.3d 1069, 1081–82 (9th Cir. 2010) (as

8  amended).

9          However, "a municipality cannot be held liable under § 1983 on a respondeat

10  superior theory."  Monell, supra, 436 U.S. at 691.  "Liability under section 1983 arises only upon

11  a showing of personal participation by the defendant.  A supervisor is only liable for

12  constitutional violations of his subordinates if the supervisor participated in or directed the

13  violations, or knew of the violations and failed to act to prevent them.  There is no respondeat

14  superior liability under section 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

15  (citations omitted).  Hence, "[a] supervisor may be liable if there exists either (1) his or her

16  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

17  between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black,

18  885 F.2d 642, 646 (9th Cir. 1989) (citing Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir.

19  1987)).

20          Additionally, "[p]roof of a single incident of unconstitutional activity is not

21  sufficient to impose liability under Monell, unless proof of the incident includes proof that it was

22  caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

23  municipal policymaker.  Otherwise the existence of the unconstitutional policy, and its origin,

24  must be separately proved.  But where the policy relied upon is not itself unconstitutional,

25  considerably more proof than the single incident will be necessary in every case to establish both

26  the requisite fault on the part of the municipality, and the causal connection between the 'policy'

1   and the constitutional deprivation." <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 (1985)

2   (fns. omitted).

3        C.   <u>Assumption of Municipal Liability by Private Medical Provider</u>

4        When a state contracts with a private party to provide medical care to its

5   prisoners, the obligations of the Eighth Amendment attach to the persons with whom the state

6   contracts. <u>West v. Atkins</u>, 487 U.S. 42, 55-56 (1988).  As found by the Supreme Court in <u>West</u>:

7            Whether a physician is on the state payroll or is paid by contract,
             the dispositive issue concerns the relationship among the State, the
8            physician, and the prisoner.  Contracting out prison medical care
             does not relieve the State of its constitutional duty to provide
9            adequate medical treatment to those in its custody, and it does not
             deprive the State's prisoners of the means to vindicate their Eighth
10           Amendment rights.  The State bore an affirmative obligation to
             provide adequate medical care to [petitioner]; the State delegated
11           that function to respondent []; and respondent voluntarily assumed
             that obligation by contract.

12

13  <u>Id.</u> at 56 (fn. omitted).

14       Similarly, employees of a private entity hired by a county to provide medical care

15  to jail inmates thereby act under color of state law, subject to liability under Section 1983.  <u>See</u>

16  <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700, 704-06 (11th Cir. 1985) (although county is

17  responsible for providing and paying for the health services of jail inmates, the acts, policies and

18  customs of the jail's delegated medical provider made within the scope of the provider's

19  delegated responsibilities are thereby official acts, policies and customs); <u>see also</u> <u>Howell v.</u>

20  <u>Evans</u>, 922 F.2d 712, 724 (11th Cir. 1991)[3] ("when the state contracts out its medical care of

21  inmates, the obligations of the eighth amendment attach to the persons with whom the state

22  contracts"), citing <u>West v. Atkins</u>, <u>supra</u>, 487 U.S. 42; <u>Hagan v. California Forensic Medical</u>

23  <u>Group et al.</u>, 2009 WL 728465, *7 (E.D. Cal. 2009) (J. Karlton) ("CFMG employees have

24  assumed a public function in providing medical care to inmates on behalf of the County.  In

25

26       [3]  This decision, vacated on other grounds in <u>Howell v. Evans</u>, 922 F.2d 712 (11th Cir.
     1991), was subsequently reinstated, <u>see</u> <u>Howell v. Burden</u>, 12 F.3d 190, 191 fn* (11th Cir. 1994).

8

1  performing this function, they are state actors whose conduct is limited by the Eighth

2  Amendment."), citing Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835-36 (9th Cir.

3  1999) (identifying several cases which have made the "necessarily fact-bound inquiry" whether

4  private conduct constitutes state action, quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922,

5  937 (1982)); George v. Sonoma County Sheriff's Department, 732 F. Supp. 2d 922, 933-36

6  (N.D. Cal. 2010) (private physician and private hospital contracting with a public prison system

7  to provide medical treatment for inmates perform a public function actionable under Section

8  1983), and cases cited therein; Newman v. County of Ventura, 2010 WL 4025618, *5 n.8 (C.D.

9  Cal. 2010) ("private § 1983 defendants" are state actors under the statute if they perform

10 functions traditionally within the exclusive authority of a governmental entity), citing Buckner v.

11 Toro, 116 F.3d 450, 453 (11th Cir. 1997), cert. denied, 522 U.S. 1018 (1997); and Dubbs v. Head

12 Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003), cert. denied, 540 U.S. 1179 (2004); see also

13 Hickey By and Through Timalu v. County of Stanislaus, 1996 WL 73371, *3 (9th Cir. 1996)

14 (because a "private corporation [CFMG] providing medical services under contract with the State

15 Department of Corrections cannot be held liable on a theory of respondeat superior," plaintiff

16 must name individual staff members as defendants) (citations omitted); Baker v. County of

17 Sonoma, 2010 WL 1038401, *13 (N.D. Cal. 2010) (assuming without deciding that CFMG

18 employees assume a public function when providing medical care to inmates and are therefore

19 subject to the proscriptions of the  Eighth Amendment); Atilano v. County of Butte, 2008 WL

20 4078809 (E.D. Cal. 2008) (same); Knowles-Browder v. California Forensic Medical Group Staff,

21 2007 WL 210518 (E.D. Cal. 2007) (same).

22       D.  Legal Standards for the Provision of Medical Care to Pretrial Detainees

23              Plaintiff contends that, as a pretrial detainee during the events at issue, his right to

24 obtain constitutionally adequate medical care was premised on the "broader protections" of the

25 Fourteenth Amendment's Due Process Clause, rather than merely on the prohibitions of the

26 Eighth Amendment.  (Dkt. No. 71 at 1, 7.)  Defendants respond that the standard of care is "the

9

1    same" under either constitutional provision.  (Dkt. No. 72 at 4.)

2            The Eighth Amendment's prohibition against cruel and unusual punishment does

3    not apply "until after conviction and sentence."  Graham v. Connor, 490 U.S. 386, 392 n.6

4    (1989), and related text.  However, "[p]retrial detainees, who have not been convicted of any

5    crimes, retain at least those constitutional rights that we have held are enjoyed by convicted

6    prisoners."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  "Thus, while the eighth amendment

7    proscribes cruel and unusual punishment for convicted inmates, the due process clause of the

8    fourteenth amendment proscribes any punishment of pretrial detainees."  Redman v. County of

9    San Diego, 942 F.2d 1435, 1441 n.7 (9th Cir.1991) (en banc).  "In light of the Supreme Court's

10   rulings that conditions of confinement violate pretrial detainees' Fourteenth Amendment rights if

11   the conditions amount to punishment, and that failure to prevent harm amounts to punishment

12   where detention officials are deliberately indifferent, we have concluded that the 'deliberate

13   indifference' standard applies to claims that correction facility officials failed to address the

14   medical needs of pretrial detainees."  Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242-

15   43 (9th Cir. 2010), citing Bell, supra, 441 U.S. at 535, and Farmer v. Brennan, 511 U.S. 825, 834

16   (1994).  "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to

17   prisoners' rights under the Eighth Amendment . . . we apply the same standards."  Frost v.

18   Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998), citing Redman, supra, 942 F.2d at 1441.

19           While some courts within this circuit maintain that the Eighth Amendment

20   provides only the minimum standard of care for pretrial detainees, thus suggesting that greater

21   protections may be required by the Fourteenth Amendment, see e.g. Gibson v. County of

22   Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002); Carnell v. Grimm, 74 F.3d 977, 979 (9th

23   Cir. 1996); Redman, supra, 942 F.2d at 1443; Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.

24   1986), this court has found no case clearly identifying such greater protections.

25           Accordingly, for present purposes, the court will apply Eighth Amendment

26   standards to plaintiff's Fourteenth Amendment due process claims.

V.  Undisputed Facts

The following facts are either undisputed by the parties or, following the court's review of the evidence, have been deemed undisputed.

1.  Plaintiff Reynaldo J. Castillo, now a prisoner at Mule Creek State Prison, was a pretrial detainee at the Solano County Jail from October 19, 2006, to August 2009.

2.  Defendant physician Ravinder Kadevari, M.D., and defendant physician assistant ("PA") Chris Pilaczynski, were at all relevant times employees of the California Forensic Medical Group, Inc. ("CFMG"), which contracted to provide medical services for prisoners at the Solano County Jail. Dr. Kadevari was also Medical Director during the relevant period. (Dkt. No. 67 at 15 (Dr. Kadevari's answer to plaintiff's Interrogatory No. 11).)

3.  According to the publication, "Inmate General Information Rules and Disciplinary Penalties for Solano County Sheriff's Department Detention Facilities" (set forth as Exh. A to Stanton Decl., Dkt. No. 65-8 at 1-37), "[t]he medical staff will make ALL decisions relative to medical care." (Id. at 19 (p. 18 of publication) (original emphasis).) In contrast, the authority of jail staff to administratively segregate jail inmates is limited to nonmedical disciplinary decisions. (Id. at 8 (pp. 7-8 of publication).)

4.  On June 20, 2008, defendant Kadevari treated plaintiff for a skin rash that Dr. Kadevari suspected may be scabies. (See Dkt. No. 71 at 35 (Exh. A).) Plaintiff complained of a rash on "both lower extremities and upper extremities [with] itching." (Dkt. No. 61-2 at 6.) Dr. Kadevari noted diffuse papulis and diagnosed possible scabies; he prescribed antiparasitic cream (Permethrin), to be applied all over plaintiff's body at bedtime, and morning showers. (Dkt. No. 61-2 at 9.) Dr. Kadevari also prescribed Benadryl, and instructed that plaintiff have a daily change of clothes and bed sheets. (Id.) In a follow-up appointment on June 27, 2008, Dr. Kadevari concluded that the suspected scabies problem had resolved. (Id. at 6.)

5.  On October 30, 2008, defendant Pilaczynski diagnosed and treated plaintiff for a "dime-sized abscess" on the lateral side of his right thigh, noting that plaintiff's "prior celly

[was diagnosed] w/ MRSA."[4]  (See Dkt. No. 71 at 64 (Exh. F); Dkt. No. 61-2 at 5.)  Pilaczynski

performed an "I & D" (incision and drainage) of the abscess, and prescribed plaintiff an

antibiotic (Bacitracin), pain medication (Vicodin initially, then Ibuprofen), and a daily change of

the dressing over the incision site until it was healed.  (Dkt. No. 61-2 at 1.)  Plaintiff's medical

records indicate that plaintiff took Bacitracin through November 9, 2008, as well as a pain

medication, and that the dressing was changed daily through November 18, 2008, when the skin

was noted to be "clean," "pink" and "stable."  (Id. at 2-4.)

　　　　　6.  Neither defendant Kadevari nor defendant Pilaczynski ordered that plaintiff be

quarantined,[5] or notified custodial staff that plaintiff may have had a communicable disease;[6] nor

had a quarantine been imposed on others at Solano County Jail prior to plaintiff's initial

treatment by either medical defendant.

　　　　　7.  It is the sworn opinion of defendants' medical expert, Dr. John Levin, M.D.,[7]

---

[4]  In a supplemental response to plaintiff's request for admission No. 6, defendant Marsh
stated that plaintiff was indeed celled with inmate Edgar Elrod in October 2008.  (Dkt. No. 71 at
164.)  As alleged in plaintiff's complaint, "On October 20, 2008, I received a cellmate named
Edward [Edgar] Elrod who was diagnosed by [PA] Chris Pilaczynski . . . as having staph
infection.  Mr. Elrod was not quarantined but placed back into the cell with me. [¶] On October
29th, 2008, [PA] Chris Pilaczynski . . . dia[g]nosed me with contracting a staph infection on the
thigh area of my right leg.  I told [him] that my cellmate . . . had staph and I contracted this
disease from him . . . ."  Dkt. No. 11 at 5-6.

[5]  Defendants assert that this fact is irrelevant because the court has dismissed plaintiff's
efforts to represent the interests of other inmates.  (See Dkt. No. 73 at 2; see also Dkt. No. 14 at 1-
2, 4; Dkt. No. 19.)  However, defendants' response to plaintiff's illnesses is probative of
defendants' practice or custom in responding to communicable diseases within the Solano
County Jail.

[6]  See defendants' answers to plaintiff's interrogatories (Interrogatory Nos. 14, 22 to
Kadevari, Interrogatory No. 12 to Pilaczynski), and response of defendant Marsh to plaintiff's
Request for Admission Nos. 1 and 2.  (Dkt. No. 67 at 2, 15-17, 27, 33-34.)

[7]  Dr. Levin states that his expertise and experience include the following:  Board
Certified in Emergency Medicine since 1992; member of Arcadia Methodist Hospital's
Emergency Medicine Committee and Paramedic/Liason Advisory Committee; has treated, and
lectured on, "signs and symptoms associated with the treatment of abscesses and infections as
well as parasitic infections including the treatment and eradication of scabies and the assessment
and control of communicable diseases."  (Dkt. No. 61 at 1-2; Dkt. No. 63 at 1-2; see also Dkt.

that the treatment provided by Dr. Kadevari "was appropriate, effective and within the standard

of care.  No other or different treatment was medically required or needed for Mr. Castillo's

problem in addition to or instead of the care provided by Dr. Kadevari."  (Dkt. No. 61 at 4.)

8.  It is the sworn opinion of defendants' medical expert, Dr. John Levin, M.D.,

that the treatment provided plaintiff by Pilaczynski met the applicable standard of care.  Dr.

Levin opined (Dkt. No. 61 at 3):

> The treatment of P.A. Pilaczynski for the abscess was effective,
> resolved the abscess without residual problems and the case was
> within the applicable standard of care.  There is no suggestion and,
> in fact, the records and the recovery of Mr. Castillo do not support,
> any claim by him that he had an MRSA infection; as noted, the
> bacitracin was effective in resolving the infective process and there
> was no need to have isolated or quarantined Mr. Castillo for what
> was a routine procedure.  Neither is there any indication of any
> iatrogenic [physician-induced] or care-giver induced problem
> associated with the incision and drainage.  The care and treatment
> was appropriate and effective and without medical residual of any
> consequence.

9.  CFMG's "Policy and Procedure Manual" provides in pertinent part that

"reportable" communicable diseases (including scabies and skin infections) should receive "the

earliest possible identification and treatment . . . and utilize proper isolation techniques."  (Dkt.

No. 71 at 120, 122 (Exh. N).)  The Manual provides that "[e]ctoparasitic infections shall be

treated by health services staff on an individual basis promptly and thoroughly confined (sic) to

prevent the spread of communicable conditions within the jail."  (Id. at 121 (Exh. N).)  This

protocol requires that inmates "suspected of having scabies will be isolated and placed on

priority list for next sick call."  (Id.)

10.  CFMG's "Policy and Procedure Manual" further provides in pertinent part

that any "diagnosis" ("actual or confirmed diagnosis, initial impression or solely by statement of

inmate") of a reportable communicable disease shall be reported by health services staff "to the

No. 61-1 at 1-2 (curriculum vitae).).

officer in charge of the facility," and to the Solano County Public Health Department.  (Dkt. No. 71 at 153-57 (Exh. R).)  Such report may be cancelled "when any of the following occur:  (1) Formal testing shows no evidence of reportable communicable disease; (2) Follow-up testing indicates inmate past stage of infectivity; (3) Inmate/ward has show[n] adequate response to medical interventions; (4) Following history taking and physical exam reveals inmate no longer contagious and presents no communicable disease risk."  (Id. at 157.)

11.  A March 2008 handbook published by the California Department of Public Health ("CDPH"), Division of Communicable Disease Control, entitled "Management of Scabies Outbreaks in California Health Care Facilities," submitted by plaintiff (Dkt. No. 71 at 97-118 (Exh. M)), supports plaintiff's contention that the CDPH recommends that every suspected case of scabies in a residential *health* facility should be tested by taking skin scrapings, and individuals with suspected scabies should be isolated until the infection has been ruled out, or has been adequately treated.  (Dkt. No. 71 at 17-18 (emphasis added).)

12.  In 2008 and 2009, the Solano County Jail (two facilities) had a combined average daily population of 1000 to 1100 inmates, reported the following instances of actual or suspected ectoparasites (including scabies), and MRSA in 2008 and 2009 (Declaration of Karina Purcell, R.N., CFMG Program Manager (Dkt. No. 64 at 2-3)):[8]

---

[8]  Ms. Purcell references an "Exhibit A," allegedly attached to her declaration, which she states contains "copies of the pertinent parts of those patients reported to have had or suspected to have had MRSA staph or scabies," with redaction of the "names and other dates that would identify the particular patient involved."  (Dkt. No. 64 at 3.)  Although this exhibit was not attached to Ms. Purcell's declaration, the information has been submitted as plaintiff's "Exhibit K."  (Dkt. No. 171 at168 through Dkt. No. 71-3 at 53 (481 pages).)  This information was provided by CFMG in compliance with this court's order filed October 7, 2010, which required that defendants Kadevari and Pilaczynski produce documents responsive to plaintiff's Requests for Production Nos. 6-10. (Dkt. No. 57 at 6-7.)  The court ruled in pertinent part (id., fns. omitted):

The[se] . . . requests appear to represent plaintiff's attempt to ascertain whether, and to what extent, Solano County Jail has implemented quarantine or related procedures to limit the spread of communicable diseases among inmates. . . . The court will . . . narrowly construe these requests (Request Nos. 6-10) to seek from

14

| Months (2008) | J | F | M | A | M | J | J | A | S | O | N | D | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ectoparasite | 2 | 0 | 1 | 0 | 0 | 0 | 2 | 1 | 1 | 2 | 0 | 0 | 9 |
| MRSA | 6 | 1 | 7 | 1 | 7 | 3 | 1 | 1 | 3 | 2 | 0 | 0 | 32 |

| Months (2009) | J | F | M | A | M | J | J | A | S | O | N | D | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ectoparasite | 0 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 5 |
| MRSA | 2 | 6 | 5 | 1 | 1 | 1 | 0 | 1 | 0 | 2 | 1 | 0 | 20 |

VI. Sworn Affidavits

The following opinions have been submitted under penalty of perjury.  Defendants have not refuted plaintiff's detailed construction of the evidence.  The court has compared plaintiff's opinions with the available evidence (noted in detail below), and finds that plaintiff's assessments are generally accurate.  Neither the court's assessment of the evidence, nor its summary of plaintiff's assessments, is intended to be thorough or conclusive, but both are sufficient to conclude that plaintiff's "failure to protect" claim cannot be decided on summary judgment.

1. It is plaintiff's sworn statement that he was celled with an inmate diagnosed with MRSA for five days before plaintiff was diagnosed with MRSA.  (Dkt. No. 71 at 28-29

---

CFMG any report, finding, monitoring, auditing, or corrective action, at Solano County Jail, regarding any communicable skin disease during the two-year period January 1, 2008 through December 31, 2009.  This information may be redacted to protect the privacy rights of third parties, but repeated references to the same inmate should be so indicated (e.g., "Inmate 1" et seq.).  This comprehensive supplemental response shall include a preface that identifies and summarizes the disclosed documents.

The statistics set forth in the chart above represent numbers of incidents; thus, if one inmate was diagnosed and/or treated on more than one occasion, the incidents are counted separately.  Based on the court's review of the pertinent information, the chart has been corrected in the following ways:  (1) The October 2008 Ectoparasite number was changed from "3" to "2" (see Dkt. No. 71 at 171 (Inmate 54 had been improperly counted twice in October)); and (2) The March 2009 MRSA number was changed from "4" to "5" (see id. at 170 (one of five inmates had been overlooked)).

1   (quoted in full infra).)

2     2.  It is the sworn opinion of Ms. Purcell, R.N., CFMG Program Manager, that the

3   above-noted statistics demonstrate "[t]here were isolated instances of reports of suspected

4   scabies . . . but no infestation that would have called for a quarantine," and that the number of

5   "suspected MRSA infections were [not] in any way approaching a need for quarantine."  (Dkt.

6   No. 64 at 2.)

7     3.  It is the sworn opinion of defendants' medical expert, Dr. John Levin, M.D.,

8   that the subject statistics "do not support any argument or conclusion that the Solano County Jail

9   had experienced an 'outbreak' of either condition much less that the suspected but not confirmed

10  report of scabies concerning Mr. Castillo that was treated and resolved, or the equally

11  successfully treated abscess on his leg without sequellae were the result of any failure by the jail

12  medical staff to quarantine the facility from an outbreak of either condition . . . [or] necessitated

13  a[] shut down of the Solano County Jail in a jail wide quarantine."  (Dkt. No. 63 at 2, 4.)

14    4.  It is plaintiff's sworn assessment of the evidence that, in 2008, only two of the

15  eight inmates with suspected or actual scabies (Inmates 50 through 57)[9] were medically isolated,

16  and that the isolation of these inmates (Inmates 50 and 54) was ordered upon intake; plaintiff

17  states that none of the inmates housed within the general jail population, who had suspected or

18  actual scabies (Inmates 51-53, 55-57), were ever isolated. (Dkt. No. 71 at 12-13; see also id. at 6

19  (Plaintiff's Opposition Memorandum).)  Plaintiff further avers that, while each of the eight

20  inmates with suspected or actual scabies was given standard treatment for scabies, none were

21  actually tested by taking skin scrapings to confirm or rule out the diagnosis.  (Id. at 13.)  The

22  court's review of this evidence generally supports plaintiff's assessment, except it appears that, in

23  addition to the isolation of Inmate 50 upon intake, Inmate 54 was isolated after being admitted to

24

25    [9]  In 2008, eight inmates were involved in nine instances of suspected or actual
26  ectoparasites; Inmate 54 was diagnosed on two different occasions in 2008.  (See Dkt. No. 71 at
    171.)

the general population (not upon intake), while Inmate 55, a general population inmate, may have

been temporarily isolated.[10]   The court further notes that defendant Kadevari is identified in many

---

[10]   The court describes only the following evidence in detail, by way of example.   The evidence pertinent to the jail's 2008 incidents of actual or suspected scabies includes the following (Dkt. No. 71-2 at 104-50, Dkt. No. 71-3 at 1-16):

Inmate 50:   January 2008 Intake; this inmate was seen for a rash with sores, and itching; the inmate was *isolated* and treated for scabies; prescribed Promethazine cream, Benadryl, and Tylenol; *no apparent testing.*  (Dkt. No. 71-2 at 104-106.)

Inmate 51:   January 2008 General Population; after this inmate reported that his "[r]oommate has scabies," he was prescribed Promethazine; *no apparent testing; no isolation.* (Dkt. No. 71-2 at 107-10.)

Inmate 52:   March 2008 General Population; this inmate was treated for skin rash and sores in December 2007 (when he was initially diagnosed with scabies), and in January 2008, February 2008, and March 2008; he was treated with Permethrin ("Elmite") cream, hydrocortisone cream, Benadryl, Tylenol, and the antibiotic Keflex, as well as morning showers, changes of linens and clothing, and a clean cell; however, there was *no apparent testing; no isolation.*  (Dkt. No. 71-2 at 111-19.)  *Significantly, this inmate is reflected only once, in March 2008, in the statistical data provided by defendants.*  (Dkt. No. 71 at 171.)  Moreover, in March 2008, in one of his multiple requests for medical care due to his skin conditions, this inmate stated, *"I have scabbies (sic) badly for over three months.  Feel I should be isolated[d] in the infirmary for at least two week[s] for treatment. . . . I do not want any body to cashtch (sic) this i.e. officers or inmates[,] very contagaous (sic)[.]  I feel I need to better isolated!  That this tank is at risk!"*  (Dkt. No. 171-2 at 118.)

Inmate 53:   July 2008 General Population (intake was two-and-a-half weeks prior); this inmate was treated for skin rash, with Promethazine cream, Benadryl, and daily change of clothes and bedding for five days; ten days later, in August 2008, this inmate was again prescribed Benadryl, as well as Prednisone; *no apparent testing; no isolation.* (Dkt. No. 71-2 at 119-37.)  This inmate was prescribed Benadryl in October and November 2008, hydrocortisone cream in August 2008, and calamine lotion in December 2008. (Id. at 122, 124, 125.)  In October 2008, this inmate was diagnosed with facial cellulitis (a staph infection), and a leg abscess in September 2008, for which she was prescribed Bacitricin. (Id. at 121, 123, 124, 132, 133)

Inmate 54:   July 2008 Intake; this inmate appears to have been *isolated* pursuant only to his second recorded incident in October 2008, when he was diagnosed with scabies, based on the medical provider's observation of "multiple, infected sores/scabs over entire body" at "various levels of healing/infestation" (Dkt. No. 71-3 at 1); the medical plan appears to indicate "Mod [medical module/isolation?] until cleared.  Scabies protocol." (Id.)  Plaintiff was prescribed Permethrin cream, Triamcinolone Acetonide cream, daily change of clothing and linens, and Bacitricin; *no apparent testing.* (Dkt. No. 71-2 at 138-150 , Dkt. No. 71-3 at 1-3.)

Inmate 55:   August 2008 General Population; this inmate was seen in July and August for treatment of a body rash diagnosed as "scabies vs. poison oak," with a decision to treat the

of these records as the attending physician and/or the physician charged with supervising the attending nurses and physicians' assistants, including defendant Pilaczynski.

    5.  It is plaintiff's further sworn assessment that the 2009 evidence demonstrates that only two of the five inmates treated for suspected or actual scabies (Inmates 58 through 62) were medically isolated, and that the isolation of these inmates (Inmates 59 and 61) was ordered only upon intake.  (Dkt. No. 71 at 15.)  Plaintiff opines that none of the three inmates who were already within the prison population when treated for scabies (Inmates 58, 60, 62) were isolated. (Id. at 14-15; see also id. at 6 (Plaintiff's Opposition Memorandum).)

    The court's review of this evidence (Dkt. No. 71-3 at 17-53) generally supports plaintiff's assessment, including the lack of evidence that any skin scrapings were taken for affirmative diagnosis.  The court further notes that Inmate 59 ("April 2009"), was treated a second time for suspected or actual scabies in October 2009 (Dkt. No. 71-3 at 21), although this incident is not included in defendants' data (Dkt. No. 71 at 171).  Similarly, Inmate 62 ("October 2009") was apparently treated in April 2009 for suspected or actual scabies (Dkt. No. 71-3 at 50-

---

infection as scabies; it appears that plaintiff was ordered *isolated* for 5 days, and prescribed, inter alia, Permethrin cream, morning showers, and daily change of clothes, bedsheets and blankets for 3 days; *no apparent testing.* (Dkt. No. 71-3 at 4-7).

Inmate 56:  September 2008 General Population; this inmate was treated for "possible scabies," with instructions that his linen be changed one time after his treatment with Promethazine; *no apparent testing; no isolation.*  (Dkt. No. 71-3 at 8-12.)  *Subsequently, in October, the attending nurse noted plaintiff's "multiple complaints about having scabies and not being treated.  I/M states he tested people for scabies for 20 years and knows he has scabies.  I/M is argumentative and not open to other ideas/suggestions . . . 2 patches of dry skin on [both] wrists. [No] other areas of concern . . . . will discuss [with] MD."* (Id. at 10.)  There was no apparent follow-up.

Inmate 57:  October 2008 General Population; this inmate was initially seen for "intense itching" and "multiple bumps on wrists;" he was seen a week later for continued itching and additional bumps on his arm and between his legs; it was noted that the inmate had not followed directions after his initial treatment, which was use of Permethrin cream; plaintiff was again directed to use the cream and to shower in the morning; he was also to be provided with clean linen after his shower; *no apparent testing; no isolation.*  (Dkt. No. 71-3 at 13-16.)

53), although this incident does not appear to be included in defendants' data (Dkt. No. 71 at 171).  Additionally, Inmate 60 ("July 2009") was subsequently treated, in August 2009, for cellulitis (a staph infection), although it appears that he initially sought medical treatment for this condition as early as May 2009 (Dkt. No. 71-3 at 32, 37.)

6.  It is plaintiff's further sworn assessment of the evidence that, of the thirty-two incidents of actual or suspected MRSA in 2008 (Inmates 1 through 31 (Dkt. No. 71 at 169-70)), only one inmate (Inmate 2) was isolated, and this decision appears to have been made based on other medical concerns; sixteen of these inmates were treated by defendant Pilaczynski.  (Dkt. No. 71 at 20-21, 178-90; see also id. at 172-77, 191-250; Dkt. No. 71-1 at 1-155.)

7.  Plaintiff further avers that, in 2009, of the twenty incidents of suspected or actual MRSA infections (Inmates 32 through 49 (Dkt. No. 71 at 170)), none of the these inmates were medically isolated; eight of these inmates were treated by defendant Pilaczynski.  (Dkt. No. 71 at 22-23;  see also Dkt. No. 71-1 at 156-85; Dkt. No. 71-2 at 1-98.)[11]

## VI.  Discussion

### A.  Dismissal of County

Plaintiff fails to allege any basis for holding defendant Solano County liable for the medical decisions it delegated to defendant CFMG employees.  It is undisputed that the County delegates all medical care and decisions at its detention facilities to CFMG and its employees.  Moreover, as plaintiff alleges, the policies at issue are those of CFMG, and the question whether these policies were followed rests on the conduct of the defendant CFMG employees.  The only challenged policy of the County itself, authorizing the administrative

---

[11]  Plaintiff also seeks to demonstrate, based on his review of the submitted medical records, that examinations by medical providers were routinely performed in unsanitary locations and conditions.  This matter, which may be relevant in assessing defendants' practices or customs as it relates to exposing plaintiff to contagious diseases, may be further explored at trial. See n.12, infra.

1   segregation of prisoners for disciplinary reasons, is not relevant to the medical decisions

2   challenged herein.  Nor does plaintiff allege any basis for finding that the County remains liable

3   for the actions of CFMG or its employees.  See George v. Sonoma County  Sheriff's Department,

4   supra, 2010 WL 4117381 at *12 (absent binding authority that CFMG policies, practices and

5   manuals would impose liability on the County Defendants, plaintiffs fail to raise a triable issue of

6   fact as to County Defendants' liability based on actions by CFMG employees).  Rather, this case

7   does not appear to present any circumstances warranting a finding that the County continues to

8   bear some liability notwithstanding its delegation to CFMG for the provision of inmate medical

9   services.  Cf. e.g. Ancata, supra, 769 F. at 704-705 (county remains liable for providing access to,

10  and funding of, medical services); Hagan, supra, 2009 WL 728465 at *7 ("if CFMG employees

11  commit a constitutional violation, and the moving force behind this violation was a County

12  policy manifesting deliberate indifference to constitutional rights, then the County may be

13  liable").  Therefore, the County of Solano should be dismissed from this action.

14          The court further finds that remaining defendants Dr. Kadevari and PA

15  Pilaczynski, employees of CFMG, were at all relevant times performing a public function on

16  behalf of Solano County, and were therefore state actors subject to liability under Section 1983.

17  This conclusion is underscored by plaintiff's allegation that these defendants, as a matter of

18  practice or custom, failed to adhere to CFMG's own policies.  Private actors performing a public

19  function "can only be liable under § 1983 if [p]laintiff[] raise[s] a triable issue of fact that the

20  [alleged constitutional] violations occurred as a result of a policy, decision, or custom

21  promulgated or endorsed by the private entity," or its delegees, George v. Sonoma County

22  Sheriff's Department, supra, 732 F. Supp. 2d at 940.

23          Additionally, it appears, at all relevant times, that Dr. Kadevari was "Medical

24  Director" at Solano County Jail (Dkt. No. 67 at 15), and was therefore acting in a policy-making

25  and supervisory role, as well as directly providing medical services.

26  ////

1     B.  Alleged Deliberate Indifference to Plaintiff's Serious Medical Needs

2         In order to demonstrate a violation of the Eighth Amendment based on inadequate

3 medical care, plaintiff must prove "acts or omissions sufficiently harmful to evidence deliberate

4 indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious

5 medical need exists if the failure to obtain appropriate treatment could result in further significant

6 injury or the unnecessary and wanton infliction of pain. A serious medical need includes an

7 injury that a reasonable doctor or patient would find important and worthy of comment or

8 treatment, a medical condition that significantly affects an individual's daily activities, or that

9 causes chronic and substantial pain. See Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th

10 Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989); McGuckin

11 v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX

12 Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

13         The dispositive question is not identification of the most appropriate course of

14 treatment, but whether the chosen course was, in essence, criminally reckless. In Farmer v.

15 Brennan, supra, 511 U.S. 825, the Supreme Court set a very strict standard which a plaintiff must

16 meet in order to establish "deliberate indifference." Negligence is insufficient. Id. at 835. Civil

17 recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious

18 that it should be known) is insufficient. Id. at 836-37, 842. Rather, the official must both

19 reasonably infer that there exists a substantial risk of serious harm and consciously disregard that

20 risk "by failing to take reasonable measures to abate it." Id. at 837, 847. "[I]t is enough that the

21 official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at

22 842.

23         Deliberate indifference does not require that a physician altogether fail to treat an

24 inmate. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). Even if some treatment

25 is prescribed, a failure to competently treat a serious medical condition may constitute deliberate

26 indifference in a particular case. Id. Additionally, mere delay in medical treatment without more

1  is insufficient to state a claim of deliberate indifference.  Shapley v. Nevada Bd. of State Prison

2  Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Rather, "the more serious the medical needs of the

3  prisoner, and the more unwarranted the defendant's actions in light of those needs, the more

4  likely it is that a plaintiff has established deliberate indifference on the part of the defendant."

5  McGuckin, 974 F.2d at 1061.

6          Mere differences of opinion concerning appropriate treatment cannot be the basis

7  of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996);

8  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Nonetheless, in cases involving

9  complex medical issues, expert opinion will almost always be necessary to establish both the

10  standard of care and the contours of deliberate indifference.  Hutchinson v. United States, 838

11  F.2d 390, 392-93 (9th Cir. 1988).  However, unless plaintiff can demonstrate a material issue of

12  fact by providing expert evidence that the treatment he received may have been deliberately

13  indifferent, summary judgment should be entered for defendants.

14          Defendants do not dispute that plaintiff presented "serious medical needs" to Dr.

15  Kadevari and PA Pilaczynski.  While the precise nature of those needs is addressed in detail

16  below, for present purposes the court finds that the first, objective component of plaintiff's

17  deliberate indifference claim has been satisfied.

18          It is axiomatic that a serious medical need, left untreated, poses a substantial risk

19  of serious harm.  An official acts with deliberate indifference if he recognizes such a risk and

20  deliberately fails to take reasonable measures to abate it, Farmer v. Brennan, supra, 511 U.S. at

21  837, 847, thus satisfying the subjective component of an Eighth Amendment claim.

22          Both Kadevari and Pilaczynski immediately and aggressively treated plaintiff's

23  presenting medical problems.  Plaintiff's skin rash resolved within a week after plaintiff's initial

24  appointment with Dr. Kadevari.  After seven days following Dr. Kadevari's instructions -- daily

25  use of Permithrin cream, taking Benedryl, daily change of clothing and bed linen -- plaintiff's

26  rash resolved by June 27, 2008.  Similarly, plaintiff's thigh abscess healed within three weeks

1    after PA Pilaczynski opened and drained it,[12] prescribed ten days of antibiotic and pain

2    medication, and instructed staff to change the dressing on the incision site daily.  By November

3    18, 2008, nineteen days after the procedure, the site had healed.

4              Although plaintiff complains of residual scarring as a result of both skin ailments,

5    he does not contend that he experienced any residual infections.  Defendants have submitted the

6    persuasive sworn opinion of Dr. Levin that the treatment provided by both Dr. Kadevari and PA

7    Pilaczynski was not only "within the standard of care," but "appropriate" and "effective."  (Dkt.

8    No. 61 at 3, 4.)  Consistently, the County argues that plaintiff "was treated promptly, recovered

9    quickly and has no evidence of reinfection." (Dkt. No. 65-1 at 7.)  In contrast, plaintiff has

10   presented no evidence suggesting that the subject medical care was inherently inadequate.

11             Therefore, drawing all reasonable inferences in favor of plaintiff, Matsushita, 475

12   U.S. at 587, the court finds that both Dr. Kadevari and PA Pilaczynski treated plaintiff's skin

13   ailments seriously, quickly, and effectively.  Accordingly, defendants' motion for summary

14   judgment on plaintiff's claim of deliberate indifference to his serious medical needs should be

15   granted; and plaintiff's motion for summary judgment on this matter should be denied.

16        C.  Failure to Protect Plaintiff from Substantial Risk of Serious Harm

17             A different analysis is triggered by plaintiff's claim that defendants failed to

18   protect him from contracting scabies and an MRSA infection.  An inmate may state an Eighth

19   Amendment claim premised on the failure of correctional officials to remedy a condition of

20   confinement that poses a substantial risk of harm to a prisoner's future health.  Helling v.

21

_____

22        [12] Plaintiff further alleges that this procedure took place "in an unsanitary and unsecure
     area, under a flight of stairs, next to the officers desk . . . [where] both officers and inmates
23   walked around us and observed this minor surgery being performed on me with my pants pulled
     down.  I felt humiliated being a spectacle to these people." (Dkt. No. 11 at 6.)  These alleged
24   circumstances do not support a cognizable Eighth Amendment claim because the procedure and
     follow-up medical care resolved plaintiff's presenting medical problem.  These allegations may,
25   however, be probative at trial regarding defendants' practices or customs regarding sanitary
     conditions and thereby having previously exposed plaintiff to the increased risk of infection.  See
26   n.11, supra.

1  McKinney, 509 U.S. 25, 33  (1993).  It is well accepted that such "substantial risks of harm"

2  include "exposure of inmates to a serious, communicable disease," and "the mingling of inmates

3  with serious contagious diseases with other prison inmates."  Id. at 33, 34 (citations omitted).

4  "[T]he risk of contracting MRSA has been specifically identified . . . as the type of condition

5  which may form the basis of a medical indifference claim."  Lopez v. McGrath, 2007 WL

6  1577893, *5 (N.D. Cal. 2007), citing Kimble v. Tennis, 2006 WL 1548950, at *1 (M.D. Pa.

7  2006), and Cunningham v. Belleque, 2006 WL 468377, at *3 (D. Or. 2006); accord, Wooler v.

8  Hickman County, Kentucky, 2008 WL 5412826, *7 (W.D. Ky 2008) (alleged failure of jail

9  officials to prevent plaintiff's exposure to MRSA infection satisfied objective component of

10  Eighth Amendment claim).

11         Similarly, the weight of authority supports a finding that scabies presents a serious

12  medical need, and that the risk of exposure to scabies presents a substantial risk of harm.  See

13  Hemphill v. Hochberg, 2008 WL 2668946, *5 (D. N.J. 2008) (allegations of the widespread

14  presence of scabies "surely suggest that Plaintiff was exposed to an unreasonable risk of serious

15  harm"); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977) (affirming trial court's finding that

16  permitting "persons with contagious or communicable diseases, such as scabies . . . [to be]

17  incarcerated and left, in the midst of other inmates, without medical attention for a month or

18  more. . . . would violate the required standard of adequate medical services"); Mende v. Rainner,

19  1994 WL 90062, *2-3 (N.D. Cal. 1994) (dismissing with leave to amend for purpose of naming

20  proper defendants upon finding that "plaintiff may well have cognizable claims for intentional

21  exposure to a serious medical condition [scabies and/or lice] and the refusal to treat same rising

22  to the level of deliberate indifference to serious medical needs"); Ciccone v. Sapp, 238 Fed.

23  Appx. 487, *3 (11th Cir. 2007) (viewed in the light most favorable to plaintiff, "the facts . . .

24  ////

25  ////

26  ////

1    establish that scabies could be deemed objectively serious").[13]

2             The conclusion that both MRSA and scabies are serious medical needs warranting

3    protection from preventable exposure is underscored by CFMG's own written policies requiring

4    that inmates "suspected of having scabies" be isolated and promptly treated (CFMG's "Policy

5    and Procedure Manual" (Dkt. No. 71 at 121 (Exh. N)), and that inmates with any communicable

6    diseases, including scabies and skin infections, obtain "the earliest possible identification and

7    treatment," and be subject to "proper isolation techniques" in order "to prevent the spread of

8    communicable diseases" (id. at 120).  However, as set forth in the operative complaint, plaintiff

9    contends that defendants "deliberately do not practice as a mandatory procedure to quarantine

10   inmates with highly contagious diseases and deliberately place uninfected inmates with infected

11   inmates." (Dkt. No. 11 at 7-8.)  Thus, contends plaintiff, he contracted scabies and MRSA due to

12   the failure of defendants to comply with their own policies requiring isolation of inmates

13   previously exhibiting these diseases.

14            Before the court can assess whether defendants failed to protect plaintiff from

15   contracting these diseases, it must determine whether the record evidence supports a reasonable

16   inference that plaintiff did in fact have scabies and/or MRSA.  Plaintiff was never tested for, or

17   definitively diagnosed with, scabies or an MRSA infection.  However, defendants concede that

18   plaintiff *may* have had scabies (Dkt. No. 72 at 9), as noted by Dr. Kadevari when he initially

19   examined plaintiff (Dkt. No. 71 at 35).  This medical observation supports a reasonable inference

20   that plaintiff had scabies, for which he was treated by Dr. Kadevari.

21

22        [13]  But see Allen v. Gaskins, 2010 WL 1010014, *3 (D. S.C. 2010) (finding that plaintiff
     had "presented no evidence from which a reasonable jury could find that his infection presented a
23   substantial risk to his health or safety," noting that "[s]cabies is a non-life threatening skin
     condition"); Samuels v. Jackson, 1999 WL 92617, *3 (S.D. N.Y. 1999) ("[p]laintiff's discomfort
24   during the period of misdiagnosis and his resulting scars [from scabies] notwithstanding, his
     condition does not qualify as a serious medical need for the purposes of stating a claim under the
25   Constitution"); Langley v. Soney, 1999 WL 102745, *1-2 (N.D. Cal. 1999) (five-month delay in
     obtaining appropriate treatment for "a seriously aggravated scabies condition" did not rise to
26   deliberate indifference).

In contrast, defendants rely on the sworn statement of their medical expert, Dr. John Levin, M.D., that plaintiff did not have an MRSA infection because "bac[i]tracin was effective in resolving the infective process."[14] (Dkt. No. 61 at 3.) However, Dr. Levin's opinion does not rule out the possibility that bacitracin was prescribed precisely *because* PA Pilaczynski suspected that plaintiff had an MRSA infection. This inference is supported by PA Pilaczynski's notation, when he examined plaintiff on October 30, 2008, that plaintiff's "prior celly [was diagnosed] w/MRSA." (Dkt. No. 71 at 64.) Moreover, in his sworn declaration, plaintiff asserts that PA Pilaczynski tentatively diagnosed plaintiff with MRSA (Dkt. No. 71 at 28-29):

> On 10-25-08, inmate Edgar Elrod was placed in my cell. He was diagnosed with MRSA. Mr. Elrod had continues (sic) drainage of bodily fluid. His dressing would continuously (sic) be soiled and he had to change it periodically throughout the day. At that time I was not infected with MRSA and was not a suitable cohort. Mr. Elrod and myself shared a locked cell 23 hours a day. In this cell we shared toilet and sink facilities. I was not provided gloves or gowns nor allowed disinfected (sic) in the cell to clean everytime Mr. Elrod changed his dressing. Gloves, gowns and disinfected (sic) in the cell was considered contraband and subject to disciplinary action. Five days later I contracted MRSA . . .
>
> On 10-30-08,[15] I was diagnosed with tentative MRSA and given an I&D. I was placed in the cell with [another inmate, not Mr. Elrod] who was uninfected and not a suitable cohort. I shared a locked cell with [this inmate] for 23 hours a day. We shared the same toilet and sink facilities. . . .

////

---

[14]  As opined in pertinent part by Dr. Levin (Dkt. No. 61 at 3):

There is no suggestion and, in fact, the records and the recovery of Mr. Castillo do not support, any claim by him that he had an MRSA infection; as noted, the bacitracin was effective in resolving the infective process . . . .

[15]  The dates set forth in plaintiff's declaration appear to refine those alleged in the complaint, wherein plaintiff averred that, "[o]n October 20, 2008, I received a cellmate named Edward [Edgar] Elrod who was diagnosed by [PA] Chris Pilaczynski . . . as having staph infection. Mr. Elrod was not quarantined but placed back into the cell with me. [¶ ] On October 29th, 2008, **[PA] Chris Pilaczynski . . . dia[g]nosed me with contracting a staph infection on the thigh area of my right leg.** I told [him] that my cellmate . . . had staph and I contracted this disease from him . . . ." (Dkt. No. 11 at 5-6) (emphasis added.)

1    Plaintiff's sworn statement that he was provisionally diagnosed with MRSA is

2    supported by the documented treatment provided by PA Pilaczynski, which was both aggressive

3    (incision, drainage, and antibiotic), and extended (nearly three weeks of daily dressing changes

4    by medical staff).  Additionally, because the absence of any definitive diagnosis (both in

5    plaintiff's case and in cases involving other inmates) was apparently due to defendants' failure to

6    conduct diagnostic testing (despite the provisions of CFMG's "Policy and Procedure Manual"

7    requiring "the earliest possible identification and treatment" of reportable communicable diseases

8    (Dkt. No. 71 at 120, 122)), the absence of this evidence weighs against defendants when drawing

9    reasonable inferences based on the record as a whole.  Therefore, construing the evidence in

10   plaintiff's favor, Matsushita, 475 U.S. at 587, the court finds it reasonable to infer that plaintiff

11   had an MRSA staff infection, for which he was treated by PA Pilaczynski.

12       Accordingly, for purposes of summary judgment, the court finds it reasonable to

13   infer that the serious medical needs for which plaintiff was treated were scabies and an MRSA

14   staff infection.  Plaintiff contends that he contracted these diseases as a result of defendants'

15   failure to previously isolate other infected inmates.  "[A] prison official cannot be found liable

16   under the Eighth Amendment for denying an inmate humane conditions of confinement unless

17   the official knows of and disregards an excessive risk to inmate health or safety; the official must

18   both be aware of facts from which the inference could be drawn that a substantial risk of serious

19   harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "Whether a prison

20   official had the requisite knowledge of a substantial risk is a question of fact subject to

21   demonstration in the usual ways, including inference from circumstantial evidence, and a

22   factfinder may conclude that a prison official knew of a substantial risk from the very fact that

23   the risk was obvious."  Id. at 842 (citation omitted).

24       The available evidence indicates that, as a matter of practice or custom,

25   defendants failed to adhere to their own formal policies requiring the testing and isolation of

26   ////

27

1    inmates with suspected or diagnosed scabies and MSRA,[16] and that such practice or custom was

2    executed and endorsed by defendant Dr. Kadevari, as Medical Director at Solano County Jail.

3    Significantly, defendants do not assert that they acted in conformance with CFMG policies, but

4    broadly contend that there was no practical reason for isolating inmates or imposing a

5    "quarantine of the jail."  Relying on the statistical data ordered disclosed by this court,

6    defendants assert that there were only three instances of "reported or suspected ectoparasites"

7    prior to plaintiff's medical appointment with Dr. Kadevari -- two instances in January (four

8    months before plaintiff's appointment), and one instance in March (more than two months before

9    plaintiff's appointment).  (Dkt. No. 60-1 at 4-5.)  Defendants conclude that "[t]hree reports of

10   suspected or confirmed instances of ectoparasites does not constitute an epidemiological

11   outbreak necessitating a quarantine of the jail."  (Id. at 5, citing Defendants' Proposed

12   Undisputed Facts 11 and 13 (not adopted by the court).)  Stated differently, defendants assert that

13   "[t]here was no medical necessity to quarantine inmates at the Solano County Jail suspected of

14   carrying scabies in the 5 months in 2008 leading up to the June 20, 2008 treatment by Dr.

15   Kadevari."  (Id.)

16           Similarly, defendants contend that the instances of "suspected or confirmed

17   MRSA/staph infections in 2008," prior to plaintiff's appointment with PA Pilaczynski in October

18   2008 -- two instances in July, one instance in August, one instance in September, and three

19   instances in October -- "do not support any claim that the jail should have been [the] subject of a

20   quarantine."  (Id. citing Defendants' Proposed Undisputed Facts 12 and 14 (not adopted by the

21   court).)  Stated another way, defendants assert that "there is no qualified, competent medical

22   testimony nor any chronological evidence from the jail medical provider to support any claim

23   _____

24           [16] Defendant Solano County emphasizes that the County delegates to "medical staff . . .
     all decisions relative to medical care" (Dkt. No. 65-1 at 7, 11), and states that, "[e]ven if the
     County had a hypothetical mandatory quarantine policy . . . this hypothetical policy would not

25   have caused Castillo to contract scabies or a scabies-like infection or abscess; instead, it would
     have been due to the *alleged failure of individual defendants to follow the policy*" (id. at 7

26   (emphasis added).)

that a quarantine for MRSA staph infections should have been instituted at the Solano County

Jail." (Id.)

Defendants conclude that "[t]here is . . . no evidence that either Defendant was

presented with a medical situation that called for quarantine at the jail as to suspected scabies

and/or MRSA staph. . . . . There was no medical indication that a quarantine was needed at the

Solano County Jail either with respect to an alleged outbreak of scabies or the claimed

contagious staph infections[,] neither of which is confirmed by the medical records or by

competent medical testimony supporting Plaintiff's personal claims." (Id. at 10.)

This reasoning -- that there was no practical reason for isolating inmates or

imposing a "quarantine of the jail" -- appears to ignore not only CFMG's written policies but the

rationale underlying those policies.  In notable contrast are the facts and holding in Shelley v.

Bartels, 2006 WL 3834213 (W.D. Wis. 2006), in which the court granted the motion for

summary judgment filed by defendant correctional officials, based on their compliance with the

institution's own policies aimed at preventing the spread of communicable diseases among

inmates.  The district court reasoned (id. at *3):

> Defendants had policies in place to prevent the spread of infectious
> diseases such as MRSA and scabies.  All cases of suspected
> infectious skin conditions were treated free of charges.  Inmates
> were educated on ways of preventing the spread of infection.
> Inmates' cells were disinfected and the laundry of infected inmates
> was separated from the regular laundry.  Defendants did not act
> with callous disregard to any known risk to plaintiff of scabies or
> other dangerous conditions.  Defendants are entitled to judgment as
> a matter of law on plaintiff's Eighth Amendment claim that they
> exposed him to scabies or other dangerous conditions.

In contrast, the instant scenario appears to support an intentional failure to comply

with such policies, and hence potential liability under Monell, where defendants' challenged

conduct represents the "standard operating procedure" by "an official with final policy-making

authority," whose own acts "fairly represent official policy," and who "ratified the challenged

conduct of a subordinate."  Price v. Sery, supra, 513 F.3d at 966, citing Monell, 436 U.S. at 694,

1    and Ulrich v. City & County of San Francisco, 308 F.3d 968, 984–85 (9th Cir. 2002).

2    However, in order to establish liability, plaintiff must demonstrate that the

3    challenged conduct was the "actual and proximate cause" for plaintiff contracting the subject

4    infections.  See Lopez, supra, 2007 WL 1577893, at *10 (citation omitted); Wooler, supra, 2008

5    WL 5412826, at *12 (citations omitted) ("[a] § 1983 plaintiff cannot recover unless he or she

6    establishes a causal connection between the challenged conduct of the defendants and the harm

7    suffered").  In this regard, plaintiff asserts, "I can not specifically prove how I contracted scabies,

8    I can, however, prove how I contracted staph -- through my roommate Edgar Elrod."  (Dkt. No.

9    71 at 5 (citations omitted).)  Defendants argue that the statistical data demonstrates that plaintiff

10   is unable to prove that he contracted either communicable disease as a result of "any failure on

11   the part of the jail medical staff. . . ."  (Dkt. No. 72 at 9.)

12   The parties' disagreement regarding causation, as well as their underlying

13   disagreement whether plaintiff actually contracted scabies or an MRSA infection, present

14   genuine factual disputes requiring resolution by a trier of fact.  As earlier noted, the party

15   opposing a motion for summary judgment need not conclusively establish a material issue of fact

16   in his favor, only that "the claimed factual dispute . . . require[s] a jury or judge to resolve the

17   parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.

18   Accordingly, defendants' motions for summary judgment on plaintiff's claim that

19   defendants failed to protect plaintiff from a serious risk of harm should be denied; and plaintiff's

20   motion for summary judgment on this claim should also be denied.

21   VII.  Conclusion

22   For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

23   1.  Plaintiff's motion to dismiss (Dkt. No.  67) be granted; defendants Stanton,

24   Dolan, Marsh, and Grapentine should be dismissed from this action.

25   2.  Defendant Solano County should be dismissed from this action.

26   3.  The motion for summary judgment filed by the County defendants (Dkt. No.

65) should be denied as moot.

        4.  The motions for summary judgment filed by defendants Kadevar and Pilaczynski (Dkt. No. 60), should be granted in part and denied in part; plaintiff's claim for deliberate indifference to his serious medical needs should be dismissed; plaintiff's remaining "failure to protect" claim should proceed to trial.

        5.  Plaintiff's motion for summary judgment (Dkt. No. 71) should be denied.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 11, 2011

 

                                      _____
                                      KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE

cast3080.msj.fin.